UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BARBARA DIPASQUALE and
RICHARD DIPASQUALE,

    Plaintiffs,

v.                                                                                       Case No. 2:07-cv-0033
                                                                                         HON. R. ALLAN EDGAR
PAULA RECHNER, M.D. and PAULA
M. RECHNER, M.D. d/b/a ADVANCED
SURGICAL CARE and COURTNEY
E.J. HOWELL,

    Defendants.
_____/

**MEMORANDUM**

    Plaintiffs Barbara and Richard DiPasquale bring this action for medical malpractice on the basis of diversity jurisdiction. Defendants Paula Rechner, M.D., Paula M. Rechner M.D. d/b/a Advanced Surgical Care and Courtney E.J. Howell (collectively "Defendants") have moved for partial summary judgment on Plaintiffs' claims. [Court Doc. No. 45]. They seek this court's dismissal of the loss of consortium claim by Richard DiPasquale on the grounds that he did not provide Defendants with the requisite notice of intent necessary pursuant to Mich. Comp. Laws § 600.2912b and that his claim is now outside of the statute of limitations. Defendants further assert that Plaintiffs' claims that were not apparent in their notice of intent should also be dismissed. Plaintiffs oppose the motion. [Court Doc. No. 48].

    The record is now ripe for review by this court. After reviewing the arguments of the parties, and the applicable law, the court now determines that the Defendants' motion will be GRANTED IN PART and DENIED IN PART.

A.     **Background Facts**

Plaintiffs claim that Barbara DiPasquale responded to a newspaper advertisement by Dr. Rechner and Advanced Surgical Care for non-surgical laser treatment for spider veins on her face. [Court Doc. No. 1 ("Complaint"), ¶¶ 13-14]. Plaintiffs claim that Defendants advised Mrs. DiPasquale that "a non-surgical procedure with a laser machine would remove the small veins on her face and would lighten the veins and make them less noticeable for cosmetic purposes." *Id.* at ¶ 15.

Plaintiffs allege that on March 14, 2005, the Defendant, Courtney Howell, a technician, performed the laser treatment on Mrs. DiPasquale without any supervision from Dr. Rechner. Complaint, ¶ 18. Plaintiffs complain that Ms. Howell did not test a patch of skin with the laser machine and did not verify that the laser setting was appropriate for the treatment of facial spider-veins. Nor, they allege, did Dr. Rechner check the laser machine for the appropriate setting. Plaintiffs allege that Ms. Howell "passed the laser across Barbara DiPasquale's face multiple times, with the laser set contrary to the manufacturers [sic] recommendation, carving deep facial ruts and transverse facial lines and/or grooves into Barbara DiPasquale's face." *Id.* at ¶ 27.

Plaintiffs further contend that Ms. Howell applied aloe vera ointment on Mrs. DiPasquale's face following the laser treatment, despite Mrs. DiPasquale's admonition that she was allergic to aloe vera. Complaint, ¶¶ 29, 30. Mrs. DiPasquale allegedly suffered a severe allergic reaction following application of the aloe vera. Plaintiffs complain that Defendants' breach of their duties has caused Mrs. DiPasquale to suffer "deep facial rutting, pitting and permanent facial scars." *Id.* at ¶ 35. Plaintiffs assert that:

> the permanent facial scarring, rutting and pitting that the Plaintiff is suffering with was entirely preventable if the following actions had been taken:
> a) If the laser parameters had been properly set, according to manufacturers [sic] recommendations;
> b) If the Defendants had listened to the Plaintiff's information about her allergies;
> c) If the proper ointment had been applied following the laser treatment; and
> d) If the proper supervision and direction had been given by the Defendant Physician;
> e) If the proper care was taken with respect to the use of the laser on Barbara DiPasquale's face, in accordance with the standard of care and skill required of and ordinarily exercised by licensed physicians engaged in this medical practice.

*Id.* at ¶ 39.

Mrs. DiPasquale claims negligence against Defendants, while Mr. DiPasquale brings a claim for loss of consortium. Defendants assert that Mr. DiPasquale never provided them with a notice of intent pursuant to Mich. Comp. Laws § 600.2912b with respect to any claim asserted by Mr. DiPasquale. Further, they argue that several of Mrs. DiPasquale's claims should be dismissed for failure to include them within the notice of intent.

The notice of intent provided to the three Defendants on April 5, 2006 ("Notice of Intent") makes no mention of Mr. DiPasquale or of his loss of consortium claim. [Court Doc. No. 1-2, Notice of Intent]. The cover letter states that "Plaintiff Barbara DiPasquale's Notice of Intent to File a Claim Under MCL 600.2912(b) [sic]" is enclosed. *Id.* The Notice of Intent states in part:

> The standard of care or practice of the Defendants herein, required the Defendants to do the following:
> (A) To provide laser treatment services and care to the Plaintiff, for her varicose/spider veins with a careful cautious and conservative approach to the treatment. A small area should have been tested, prior to treating the Plaintiff's entire face with a laser setting that was far too intense. The Defendants owed a duty to listen to their patient when she advised them of her allergy to aloe vera, rather than ignoring and even arguing with her that the aloe vera ointment would

not cause her any harm.

(B)     Defendants, Advanced Surgical Care and Paula Rechner, M.D., are liable herein by virtue of independent negligence and/or under the doctrine of respondeat superior for the acts of its agents, servants, and/or employees, and other persons who rendered care, treatment or medical services to Plaintiff under some concession arrangement because of their apparent authority to be the agent, servant and/or employee of Defendant Advanced Surgical Care and Paula Rechner, M.D.

(C)     Defendant employer, Advanced Surgical Care and Paula Rechner, M.D. is liable herein under the doctrine of respondeat superior for the acts of its agents, servants and/or employees, and other persons who rendered care, treatment or medical services to the Plaintiff under some concession arrangement because of their apparent authority to be the agents, servants and/or employees of Defendant employer, Advanced Surgical Care and Paula Rechner, M.D. . . .

(E)     Advanced Surgical Care and Paula Rechner, M.D. failed to furnish Plaintiff with diligent and skillful care, competent attendants and safe equipment.

(F)     That Advanced Surgical Care and Paula Rechner, M.D. were guilty of independent negligence to Plaintiff by carelessly and/or negligently permitting personnel as well as physicians, to be employed by Advanced Surgical Care and Paula Rechner, M.D., or given privileges or continued privileges at Advanced Surgical Care and/or on the staff of Defendant employer, who Defendant employer knew or in the exercise of reasonable care should have known, that said persons were unfit to render medical care and attention to Plaintiff by reason of their inexperience and/or habitual negligent conduct. . . .

Notice of Intent, Part 2.

Defendants claim that the Notice of Intent failed to mention the following claims:

failure (1) of the technician to consult with her physician employer to ensure that the parameters on the laser equipment were set according to the manufacturers [sic] recommendations, (2) of the technician to request that a physician be present in the treatment room to supervise and oversee the laser treatment procedure, (3) of the technician to consult with the physician with regard to plaintiff's allergy to aloe vera or seek an alternative cream or ointment and "seek medical guidance on this issue," (4) of the physician to supervise the technician and be present in the treatment room during the course of the laser treatment, (5) of the physician to ensure that the laser equipment was set in accordance with the manufacturers [sic] recommendations, and (6) of the physician to seek alternative creams, ointments or procedures to avoid the use of aloe vera, given plaintiff's history, and know that aloe vera could cause burning, contact dermatitis and severe, permanent scarring. . . .

[Court Doc. No. 45]. Defendants argue that these claims should be dismissed due to the Notice of Intent's failure to provide them with reasonable notice of the facts underlying these claims.

## II. Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to

weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

**III. Analysis**

The parties agree that Michigan law applies in this diversity action. Michigan law requires persons filing medical malpractice actions to provide potential defendants with a notice of intent prior to filing a lawsuit. The statute states in relevant part:

> (1) Except as otherwise provided in this section, a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced. . . .
> (4) The notice given to a health professional or health facility under this section shall contain a statement of at least all of the following:
> (a) The factual basis for the claim.
> (b) The applicable standard of practice or care alleged by the claimant.
> (c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.
> (d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.
> (e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.
> (f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim.

Mich. Comp. Laws § 600.2912b(1), (4). Michigan law provides a 2-year statute of limitations for claims of malpractice. *See* Mich. Comp. Laws § 600.5805(6); Mich. Comp. Laws § 600.5838a(2). Michigan law also provides that:

> [t]he statutes of limitations or repose are tolled in any of the following circumstances: . . . (c) At the time notice is given in compliance with the applicable notice period under section 2912b, if during that period a claim would be barred by the statute of limitations or repose; but in this case, the statute is tolled not longer than the number of days equal to the number of days remaining in the applicable notice period after the date notice is given.

Mich. Comp. Laws § 600.5856(c).

Michigan courts have elucidated the purpose of the notice of intent statute: "[t]he purpose of the notice requirement is to promote settlement without the need for formal litigation and reduce the cost of medical malpractice litigation while still providing compensation for meritorious medical malpractice claims that might otherwise be precluded from recovery because of litigation costs." *Neal v. Oakwood Hosp. Corp.*, 575 N.W.2d 68, 71 (Mich. Ct. App. 1998). However, the purpose of the notice of intent is "not to prevent prejudice to a potential defendant." *Id.* at 75.

Defendants argue that because Mr. DiPasquale did not provide them with a separate notice of intent, his claim for loss of consortium is now barred by the statute of limitations. They also claim that they did not receive notice of several of the Plaintiffs' claims in the Notice of Intent and that therefore, these claims are barred as well. The court will address each argument separately.

**A.    Mr. DiPasquale's Loss of Consortium Claim**

The parties agree that no Michigan court has addressed the precise situation presented in this matter. However, Michigan courts have provided some guidance regarding the interpretation of the language used in Mich. Comp. Laws § 600.2912b. For example, Michigan courts have made clear that plaintiffs bear the burden of demonstrating compliance with the requirements of

Mich. Comp. Laws § 600.2912b.  *See Roberts v. Mecosta Cty. General Hosp.*, 684 N.W.2d 711, 718 (Mich. Sup. Ct. 2004) (*Roberts II*).

In *Roberts v. Mecosta Cty. General Hosp.*, 642 N.W.2d 663, 664 (Mich. Sup. Ct. 2002) (*Roberts I*) the Michigan Supreme Court "reaffirm[ed] that the duty of the courts of this state is to apply the actual terms of an unambiguous statute."  The *Roberts I* court outlined Michigan courts' view of statutory construction within the context of Mich. Comp. Laws § 600.2912b:

> An anchoring rule of jurisprudence, and the foremost rule of statutory construction, is that courts are to effect the intent of the Legislature.  To do so, we begin with an examination of the language of the statute.  If the statute's language is clear and unambiguous, then we assume that the Legislature intended its plain meaning and the statute is enforced as written.  A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself.
> Section 5856(d) clearly provides that notice must be compliant with § 2912b, not just § 2912b(2) as plaintiff contrarily contends.  Had the Legislature intended only the delivery provisions of § 2912b to be applicable, we presume that the Legislature would have expressly limited compliance only to § 2912b(2).  However, the Legislature did not do so.  Rather, it referred to all of § 2912b.
> Since the statute is clear and unambiguous, this Court is required to enforce § 5856(d) as written.  As a result, the tolling of the statute of limitations is available to a plaintiff only if *all the requirements included in § 2912b are met.*

642 N.W.2d at 667 (emphasis added) (citations omitted); *see also, In re Certified Question*, 659 N.W.2d 597, 600 (Mich. Sup. Ct. 2003) ("[w]hen a legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself and there is no need for judicial construction; the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case"); *Gulley-Reaves v. Baciewicz*, 679 N.W.2d 98, 102-103 (Mich. Ct. App. 2004); *Rheaume v. Vandenberg*, 591 N.W.2d 331, 334 (Mich. Ct. App. 1999) (noting that "[b]ecause the specific statutory language of § 2912b is clear and unambiguous, we are bound to apply it as

written").

Mich. Comp. Law § 600.2912b(1) states that ". . . a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced." Mich. Comp. Laws § 600.2912b(1). As the Michigan Supreme Court noted in *Roberts I*, "[t]he phrases 'shall' and 'shall not' are unambiguous and denote a mandatory, rather than discretionary action." 642 N.W.2d at 668. The court continued, "[b]ecause § 2912b is unambiguous, we must enforce its plain language." *Id.* at 669. The court also clarified that "[s]ubsections 2912b(1) and (4) clearly place the burden of complying with the notice of intent requirements on the plaintiff. A clear and unambiguous statute requires full compliance with its provisions as written." *Id.* The court concluded that "the statute of limitations in a medical malpractice action is not tolled unless notice is given in compliance with all the provisions of M.C.L. § 600.2912b." *Id.* at 671.

This court concludes that aside from a case directly on point, it could hardly have more guidance on the meaning of § 600.2912b than the Michigan Supreme Court provided in *Roberts I*. Enforcing the unambiguous statute as written, it appears that Mr. DiPasquale had an obligation to provide a notice of intent to the Defendants, or at the least, to include his name and his claims on Mrs. DiPasquale's Notice of Intent. The statute clearly and, as Michigan courts have found, unambiguously, states "a person shall not commence an action alleging medical malpractice . . ." Mich. Comp. Laws § 600.2912b(1). The statute does not say that a patient or a claimant must provide a notice of intent, it merely states that "a person" may not commence a malpractice action without filing a notice of intent.

Plaintiffs argue that a loss of consortium claim is not a claim for medical malpractice, but rather is a separate claim. It is true that Michigan recognizes loss of consortium claims as separate claims:

> Michigan has long recognized a cause of action for loss of consortium in favor of spouses, . . . A claim for loss of consortium is simply one for loss of society and companionship. . . . a claim for loss of consortium is usually considered to be derivative, but only in the sense that it does not arise at all unless the other, impaired spouse has sustained some legally cognizable harm or injury. Thus, courts have consistently treated loss of consortium not as an item of damages, but as a separate cause of action.

*Eide v. Kelsey-Hayes Co.*, 427 N.W.2d 488, 488-489 (Mich. Sup. Ct. 1988). However, a loss of consortium claim based on an underlying medical malpractice claim may only succeed if the elements of medical malpractice are demonstrated. *See e.g.*, *Moss v. Pacquing*, 455 N.W.2d 339, 343 (Mich. Ct. App. 1990) (noting that spouse's loss of consortium claim "stands or falls upon [the spouse's] recovery of damages"). Thus, Mr. DiPasquale's claim for loss of consortium must necessarily allege medical malpractice. He may not be alleging malpractice relating to his own treatment, but he clearly must allege malpractice with respect to his wife's treatment.

The only case that this court has found that mentions a loss of consortium claim within the context of the notice of intent statute is an unpublished decision of a Michigan court of appeals. *Westfall v. McCririe*, No. 265386, 2006 WL 827955 (Mich. Ct. App. Mar. 30, 2006). This case indicates that a husband and wife filed a joint notice of intent pursuant to the statute. *Id.* at *1. The court declined to decide whether the spouse with the loss of consortium claim was a "claimant" under the statute and whether he was entitled to a separate response from the defendants. *Id.* at *6. In this action Plaintiffs clearly could have preserved Mr. DiPasquale's loss of consortium claim by filing a notice of intent that included his loss, as well as Mrs.

DiPasquale's claims.

Plaintiffs claim that Florida courts have interpreted an analogous statute under Florida law to allow a loss of consortium claim to be brought even in a case in which the loss of consortium plaintiff did not provide a pre-suit notice of intent. *See Pavolini v. Bird*, 769 So.2d 410 (Fla. Ct. App. 2000); Fla. Stat. § 766.106. However, although Plaintiffs assert that Florida's statute is highly similar to Michigan's notice of intent statute, important differences remain. The statute states in relevant part:

> After completion of presuit investigation . . . and prior to filing a complaint for medical negligence, a claimant shall notify each prospective defendant by certified mail, return receipt requested, of intent to initiate litigation for medical negligence. Notice to each prospective defendant must include, if available, a list of all known health care providers seen by the claimant . . .

Fla. Stat. § 766.102(2)(a).

Florida's statute also contains mandatory pre-suit investigation requirements. *See* Fla. Stat. § 766.203. The statute states in part:

> Prior to issuing notification of intent to initiate medical negligence litigation pursuant to s. 766.106, the claimant shall conduct an investigation to ascertain that there are reasonable grounds to believe that:
> (a) Any named defendant in the litigation was negligent in the care or treatment *of the claimant*; and
> (b) Such negligence resulted in injury *to the claimant*. . . .

Fla. Stat. § 766.203 (emphasis added). Claims under the statute must not be brought unless the plaintiff's attorney has a "good faith belief that there has been negligence in the care or treatment of the claimant." *Pavolini*, 769 So.2d at 413 (quoting Fla. Stat. § 766.104(1)). Claimants include "any person who has a cause of action arising from medical negligence." *Id.* (quoting Fla. Stat. § 766.202(1)). In *Pavolini* the Florida appellate court reasoned:

> When these statutory provisions are considered with the other provisions of the Act relating to pre-suit notice and investigation, it becomes apparent that to be a claimant under the Act, the person presenting the claim must have received negligent medical care and treatment from a medical care provider that resulted in the person's injury or death. If the person making the claim did not receive negligent medical care or treatment, the person does not qualify as a claimant under the Act by definition and hence cannot be required to comply with the pre-suit notice and investigation requirements of the Act. Accordingly, because a spouse or minor child who seeks damages for loss of consortium was not the recipient of negligent medical care and treatment from a medical care provider, the spouse or minor child is not required to comply with the pre-suit notice and investigation requirements.

769 So.2d at 413.

The Florida statute and the *Pavolini* case only serve to illustrate the differences between Florida law and Michigan law. Under Florida law, it is clear that the notice requirements apply to "claimants" – i.e. those who suffered negligent care or treatment. Michigan law states that no *person* shall assert a claim alleging medical malpractice without providing a notice of intent prior to filing the lawsuit. The Michigan statute does not limit the notice of intent requirements to claimants or patients. In addition, Michigan law does not contain a pre-suit investigation requirement or require the "claimant" to describe how defendants were negligent in his or her care. *See* Fla. Stat. § 766.203(2)(a). The Michigan statute merely requires a person alleging a claim of medical malpractice to file a notice of intent. Mich. Comp. Laws § 600.2912b(1). Unlike the situation in *Pavolini*, compliance with the Michigan statute for a loss of consortium claim is not an impossibility. *See* 769 So.2d at 412-413 (rejecting a view of the statute that raises the "specter of a party with [a derivative claim] attempting the impossible task of obtaining a verified medical opinion from a qualified health care provider when the claimant never had a medical illness or injury and was never treated by any health care provider"). Under Michigan

law, an individual may comply with the statute merely by describing what happened to the patient in the underlying medical malpractice claim.

Thus, the plain language of the unambiguous Michigan statute indicates that any person alleging medical malpractice must provide a notice of intent. The claim underpinning Mr. DiPasquale's claim for loss of consortium is a claim alleging medical malpractice. Because he failed to comply with the notice of intent requirements, his claim for loss of consortium is now time-barred by the statute of limitations. This court will GRANT Defendants' motion to dismiss Mr. DiPasquale's loss of consortium claim as untimely.

**B.      Sufficiency of Notice of Intent Regarding Certain Claims**

In *Roberts II*, the Michigan Supreme Court determined that:

> At the notice stage, discovery as contemplated in our court rules, . . . , has not been commenced, and it is likely that the claimant has not yet been provided access to the records of the professional or facility named in the notice. It is therefore reasonably anticipatable [sic] that plaintiff's averments as to the applicable standard may prove to be "inaccurate" or erroneous following formal discovery; moreover, it is probable that the alleged standard of care will be disputed by the defendants. In light of these circumstances, the claimant is not required to craft her notice with omniscience. However, what is required is that the claimant make a good-faith effort to aver the specific standard of care that she *is claiming* to be applicable to each particular professional or facility that is named in the notice.

684 N.W.2d at 718. In the *Roberts II* case the plaintiff claimed that several different defendants had committed malpractice. The court determined that the plaintiff had not provided enough information in the notice of intent for each defendant to determine the alleged standard of care that he, she, or it breached:

> Here, several different medical caregivers were alleged to have engaged in medical malpractice. Yet, rather than stating an alleged standard of practice or care for each of the various defendants– a hospital, a professional corporation, an

>obstetrician, a physician's assistant, and an emergency room physician–plaintiff's notices of intent allege an identical statement applicable to all defendants in response to 2912b(4)(b) . . .

*Id.* at 718-719.  The court held that the plaintiff failed to comply with Mich. Comp. Laws 600.2912b(4)(b) with respect to each defendant. *Id.* at 720. The court also determined that plaintiff failed to comply with Mich. Comp. Laws 600.2912b(4)(c) because she "failed to identify *any* particular action that any defendant should have taken in order to achieve compliance with the standard of care." *Id.* at 722. Plaintiff did not provide any allegation that "any of the defendants failed to perform critical tests, incorrectly diagnosed her condition, or failed to refer her to a specialist in keeping with the appropriate standard of care." *Id.* at 721. The court reversed the court of appeals and reinstated the trial court's grant of summary judgment to the defendants because plaintiff failed to fulfill the statutory notice of intent requirements.

In *Boodt v. Borgess Medical Center*, the court of appeals also addressed the sufficiency of a Notice of Intent under § 600.2912b.  728 N.W.2d 471 (Mich. Ct. App. 2007).  The court explained:

>[t]he specificity required for the notice of intent is functionally indistinguishable from the standard applicable to general civil complaints. . . . Medical malpractice claims must be pleaded so as to " 'advise the defendant with reasonable certainty, according to the circumstances of the case, of the facts upon which plaintiff proposes to rely, and will seek to prove . . .'" Therefore, we conclude that the specificity required of a notice of intent as it addresses each of the subsections under MCL 600.2912b is indistinguishable from the specificity required of a medical malpractice complaint.
>
>With respect to a medical malpractice claim, "it is essential to allege, with reasonable definiteness and certainty, the duty of the physician or surgeon to the person injured, the breach of duty complained of, the causal relation between the breach of duty and the injuries complained of, and resulting damage.'" . . . The important principle is that a defendant must not be forced "to guess upon what

> grounds plaintiff believes recovery is justified," but at the same time plaintiffs
> should not be subject to the "straightjacket" of "[e]xtreme formalism . . ."
>
> It is therefore a deeply entrenched rule of Michigan jurisprudence and
> basic fairness that all pleadings are sufficient if they communicate to the opposing
> party the nature of the claims or defenses those pleadings purport to raise.

*Id.* at 626-628 (citations and quotations omitted). *See also, Tousey v. Brennan*, 739 N.W.2d 128, 131 (Mich. Ct. App. 2007).

While the standards for a notice of intent are not intended to be a "'straightjacket' of 'extreme formalism'", the notice must provide enough information to each individual defendant of his or her role in the alleged breaches of the standard of care. *Boodt*, 728 N.W.2d at 627; *see also, Gulley-Reaves v. Baciewicz*, 679 N.W.2d 98, 102 (Mich. Ct. App. 2004). In *Gulley-Reaves*, the court determined that the notice of intent was inadequate to allege a claim based on the administration of anesthesia where the notice of intent failed to allege a breach of the standard of care and causation relating to the anesthesia and also failed to name the specific anesthesiologist and nurse involved in the administration of the anesthesia. *Id.* The court "conclude[d] that the notice did not set forth the minimal requirements to identify that the anesthesia was a potential cause of plaintiff's injury . . . Plaintiff did not minimally allege that the agents of the hospital that administered the anesthesia were at fault." *Id.* at 104; *see also, Rheaume*, 591 N.W.2d at 334 (dismissing complaint against defendant not specifically named in notice of intent in accordance with § 600.2912b(4)).

In this action Defendants claim that Plaintiffs failed to provide sufficient notice of six different claims in the Notice of Intent:

> failure (1) of the technician to consult with her physician employer to ensure that
> the parameters on the laser equipment were set according to the manufacturers
> [sic] recommendations, (2) of the technician to request that a physician be present

> in the treatment room to supervise and oversee the laser treatment procedure, (3) of the technician to consult with the physician with regard to plaintiff's allergy to aloe vera or seek an alternative cream or ointment and "seek medical guidance on this issue," (4) of the physician to supervise the technician and be present in the treatment room during the course of the laser treatment, (5) of the physician to ensure that the laser equipment was set in accordance with the manufacturers [sic] recommendations, and (6) of the physician to seek alternative creams, ointments or procedures to avoid the use of aloe vera, given plaintiff's history, and know that aloe vera could cause burning, contact dermatitis and severe, permanent scarring. . . .

[Court Doc. No. 45]. The Notice of Intent states the factual basis for the claim as follows:

> Barbara Dipasquale presented at Advanced Surgical Care, to Courtney E.J. Howell on March 14, 2005 for laser treatment for varicose/spider veins, under the supervision and direction of Dr. Paula Rechner, M.D. and was treated by:
>
> Courtney E.J. Howell, Certified Laser Specialist, used a laser to treat Barbara Dipasquale's varicose/spider veins and set the laser at such an intense setting that it caused deep rutting, pitting and scarring to her face. Subsequent to using the laser on Barbara Dipasquale's face, aloe vera ointment was applied to her face, even though Barbara Dipasquale had advised the Laser Specialist that she was allergic to aloe vera. Advanced Surgical Care and Dr. Paula Rechner, M.D. breached the standard of care by failing to supervise Courtney E.J. Howell, Certified Laser Specialist. It was the professional corporation's duty, among other things to select, employ, train and monitor their employees, including Courtney E.J. Howell, Certified Laser Specialist. Advanced Surgical Care and Paula Rechner, M.D. should have been monitoring the procedures, laser equipment and setting and the general actions and treatments that were being administered by Courtney E.J. Howell, Certified Laser Specialist. As a result of the actions of Courtney E.J. Howell, Paula Rechner, M.D. and Advanced Surgical Care's actions and inactions, the Plaintiff Barbara Dipasquale has sustained a permanent loss. Specifically, Plaintiff has sustained deep rutting, pitting and scarring to her face as well as mental stress, fright, shock embarrassment, stress, anxiety, medical expenses and loss of income.

Notice of Intent, Part I. This court has already quoted much of Part II of the Notice of Intent relating to the alleged breaches of the applicable standard of care in Part I, *supra*.

Defendants cite *Guilley-Reaves*, *Roberts II*, and *Boodt* as support for their position that the six described failures should be dismissed. The court finds that these cases are

distinguishable. For example, in *Guilley-Reaves* the notice of intent never mentioned the anesthesia provided to plaintiff and never personally named the two defendants responsible for the administration of the anesthesia. 679 N.W.2d at 102. In contrast, in this action, Plaintiffs clearly provided all three Defendants with personal notice of the Notice of Intent. In addition, the Notice of Intent clearly states that Dr. Rechner failed to supervise Ms. Howell and that Ms. Howell "set the laser at such an intense setting" that it damaged Mrs. DiPasquale's face. *See* Notice of Intent, Part I. The Notice of Intent also mentions problems caused by the application of aloe vera and the damage caused to Mrs. DiPasquale due to Ms. Howell's actions regarding the aloe vera.

In *Roberts II* the court noted that the statute requires the "claimant [to] make a good-faith effort to aver the specific standard of care that she *is claiming* to be applicable to each particular professional or facility that is named in the notice." 684 N.W.2d at 718. In that case the plaintiff did not provide any information regarding the standard of care applicable to varying defendants, including a hospital, a professional corporation, an obstetrician, a physician's assistant, and an emergency room doctor. *Id.* at 718-719. Nor did the notice indicate whether the hospital and professional corporation were directly or vicariously liable. *Id.* at 719. In addition, the plaintiff provided the defendants with a circular description of their alleged breaches of applicable standards of care. *Id.*

Again, this case is distinguishable. Plaintiffs clearly state that Dr. Rechner and Advanced Surgical Care are both directly liable and vicariously liable. Further, Plaintiffs describe the applicable standard of care, including using a "careful, cautious, and conservative" approach, following a duty to listen to the patient regarding her allergies, testing an area prior to using a

laser setting far too intense, providing competent attendants and safe equipment, and not permitting inexperienced staff to render medical care. In their statement of facts, Plaintiffs clearly indicate that Dr. Rechner and Advanced Surgical Care "breached the standard of care by failing to supervise Courtney E.J. Howell." Notice of Intent. They further refer to the duty to monitor Mrs. Howell. Plaintiffs do not use circular language in describing the breach of the standard of care, nor do they fail to supply detailed descriptions of each Defendant's role in the alleged injury.

Finally, *Boodt* is also inapposite. The *Boodt* court emphasized the need to "review the notice as a whole." 728 N.W.2d at 477. In that case the court determined that two professional corporations were appropriately dismissed because the notice of intent "fail[ed] to reveal *any* indication of how Borgess Medical Center or Heart Center for Excellence, P.C., is involved in the underlying events." *Id.* at 476. However, the court held that, when reviewing the notice as a whole, the allegations of breach of the standard of care against the individual doctor were clear enough. *Id.* at 478-479. The important concept to remember, the court explained, is that the defendant should not be forced to "guess upon what grounds plaintiff believes recovery is justified." *Id.* at 476.

In this action there is no guesswork to determine what the Plaintiffs allege all three Defendants did and the theory of recovery. The Notice of Intent clearly states how all three Defendants were allegedly involved in the underlying events, and it clearly indicates allegations relating to the supervision of Ms. Howell, the failure to use an appropriate setting on the laser machine, and the disregard of information pertaining to Mrs. DiPasquale's allergy to aloe vera. There is nothing in the statute that states that a complaint based on a prior notice of intent must

include the language used in the notice of intent verbatim. The point is to eliminate guesswork regarding the basis of a plaintiff's claims. Plaintiffs have done so here. Plaintiffs' complaint merely supplies additional description to facts alleged in the Notice of Intent, rather than new claims altogether.

The six claims that Defendants allege were not adequately included in the Notice of Intent all involve either Ms. Howell's failure to seek medical guidance or Dr. Rechner's duty to supervise Ms. Howell in the provision of medical treatment to Mrs. DiPasquale. They all involve either the laser treatment, the proper setting for the laser treatment, and the use of aloe vera on Mrs. DiPasquale's skin. All of these issues are clearly raised in the Notice of Intent, which must be read as a whole. *See Guilley-Reaves*, 728 N.W.2d at 477. The Notice of Intent asserts that the Defendants had a "duty to listen" to their patient regarding her allergy to aloe vera and to use a "careful, cautious and conservative" approach before applying a laser setting "far too intense." Further, the Notice of Intent clearly alleges that Ms. Howell was inexperienced and/or habitually negligent. The parties have not directed this court to any cases or statutory provisions suggesting that a specific standard of care is applicable to a certified laser specialist, who is not otherwise licensed by the medical community. In the absence of such specific applicable standards, the Notice of Intent clearly describes how Ms. Howell lacked the training, experience, and supervision to perform the laser treatment and apply aloe vera to Mrs. Dipasquale. The court will therefore, DENY Defendants' motion for dismissal of the six claims they identify as being outside the Notice of Intent.

IV.   **Conclusion**

For the reasons stated *supra*, Defendants' motion for partial summary judgment will be

GRANTED IN PART and DENIED IN PART. This court will DISMISS Mr. DiPasquale's claim for loss of consortium as untimely. This court will DENY Defendants' motion to dismiss the six claims they allege were not included within the Notice of Intent.

    A separate order will enter.

Date: 6/17/08

                                             */s/ R. Allan Edgar*
                                             R. ALLAN EDGAR
                                   UNITED STATES DISTRICT JUDGE